(No. 84566.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOHN CHILDRESS, Appellant.

*Opinion filed April 20, 2000.—Rehearing denied May 30, 2000.*

HARRISON, C.J., concurring in part and dissenting in part.

Marshall J. Hartman, Deputy Defender, and Sheldon B. Nagelberg, both of the Office of the State Appellate Defender, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb, William D. Carroll, and Eileen M. O'Neill, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

The petitioner, John Childress, appeals from a Cook County circuit court order dismissing his post-conviction petition. Because petitioner was sentenced to death, this court has jurisdiction over the instant appeal pursuant to Supreme Court Rule 651(a) (134 Ill. 2d R. 651(a)). For the following reasons, we now affirm.

## BACKGROUND

A jury in the circuit court of Cook County convicted petitioner of first degree murder, home invasion, burglary and attempted aggravated criminal sexual assault and sentenced petitioner to death. On direct appeal, this court reversed petitioner's conviction for burglary, but affirmed petitioner's remaining convictions and death sentence. *People v. Childress*, 158 Ill. 2d 275 (1994). The United States Supreme Court denied petitioner's petition for writ of *certiorari*. *Childress v. Illinois*, 513 U.S. 881, 130 L. Ed. 2d 143, 115 S. Ct. 215 (1994).

Petitioner subsequently filed a post-conviction petition alleging that his trial counsel was ineffective for, *inter alia*, (1) failing to ask prospective jurors whether they would automatically impose the death penalty if

petitioner was found guilty of first degree murder; (2) failing to introduce into evidence photographs of wounds on petitioner's hands which depicted defensive wounds consistent with petitioner's claim that the victim was the initial aggressor; and (3) failing to investigate and present mitigating evidence regarding petitioner's medical and family background at sentencing.

The trial court dismissed petitioner's first and third claims without conducting an evidentiary hearing. The trial court conducted an evidentiary hearing on petitioner's remaining claim regarding defense counsel's failure to introduce the photographs of petitioner's hands. At the evidentiary hearing, the parties stipulated that the victim was stabbed to death on the night of August 15, 1989, and that petitioner was arrested by the police the following day. Deborah Hansen, an investigator for the Cook County public defender's office, testified that on August 17, 1989, she took 10 Polaroid photographs of cuts on petitioner's hands.

Karen Shields, an assistant Cook County public defender, testified that she had been an assistant public defender for approximately eight years when she was appointed to represent petitioner. At that time, Shields was a member of the Cook County public defender's homicide task force, which was composed of more experienced public defenders who exclusively represented defendants charged with murder. Shields testified that she examined the photographs prior to trial but decided not to introduce the photographs into evidence at trial because she thought the wounds were fingernail scratches which could have been inflicted while petitioner was stabbing the victim. Shields also testified that it was impossible to tell from the photographs how old the wounds were. Shields was concerned that the photos were a "double-edged sword" because they were a "vivid reminder" to the jury of the injuries suffered by the petitioner

compared to numerous stab wounds suffered by the victim. (The victim sustained 12 stab wounds and 10 incised wounds.) Shields testified that she was concerned the State would use the photos against petitioner.

Charles Buchholz, an assistant Cook County public defender who served as Shields' co-counsel at petitioner's trial, testified that he also examined the photographs of petitioner's hands prior to trial. Buchholz testified that he wrote a memo memorializing why he and Shields decided not to introduce the photographs at trial and placed the memo in petitioner's case file. The memo states that the photos "show some minor scrapes and cuts" which were inconsistent with petitioner's statement that he struggled with the victim and took the knife away from her before stabbing her. Buchholz testified that Karen Shields added a brief notation at the bottom of the memo stating, "The photos do not look like knife wounds but more like cigarette burns."

Kathleen Pantle and Crystal Marchigiani, two assistant Cook County public defenders who worked with Shields on the homicide task force, testified that Shields asked them to look at the photographs of the wounds on petitioner's hands. Pantle testified that she told Shields that the photographs would not help the defense because the injuries were minor and she did not think petitioner's injuries were of the magnitude that would have been inflicted during the course of the struggle with the victim. Marchigiani testified that she also told Shields that she would not use the photographs at trial because she "didn't think that these injuries would lead somebody to act as Mr. Childress was alleged to have acted."

Laverne Lewis, petitioner's cousin, testified that she played cards with petitioner in the afternoon on the day following the murder. Lewis testified that she noticed "[l]ittle small" cuts on petitioner's right hand. She asked petitioner how he got the cuts, and he responded that "he got into it with somebody."

After considering the evidence presented at the hearing, the trial court dismissed petitioner's claim.

## ANALYSIS

At the motion to dismiss stage in post-conviction proceedings, all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true. The inquiry into whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the trial court to engage in any fact-finding or credibility determinations. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). As a result, there is little justification for giving deference to the trial court's conclusions as to the sufficiency of the allegations in the post-conviction petition. *Coleman*, 183 Ill. 2d at 388-89. The standard of review for a trial court's decision to dismiss post-conviction claims without conducting an evidentiary hearing, therefore, is *de novo*. *Coleman*, 183 Ill. 2d at 389. By contrast, we will not reverse a trial court's decision to dismiss petitioner's claim after conducting an evidentiary hearing unless it is manifestly erroneous. *Coleman*, 183 Ill. 2d at 385.

Petitioner first argues that his trial counsel was ineffective for failing to ask prospective jurors during *voir dire* whether they would automatically impose the death penalty after a conviction of murder. Petitioner argues that counsel's failure to ask this question, which is commonly referred to as a "reverse-*Witherspoon*" question, led to the impanelment of a jury which was predisposed to impose the death penalty.

Petitioner did not raise this argument on direct appeal. Normally, issues which could have been raised on direct appeal but were not are considered waived. *People v. Coleman*, 168 Ill. 2d 509, 522 (1995). Petitioner, however, alleges that his appellate counsel was ineffective for failing to raise this argument on direct appeal.

Therefore, the doctrine of waiver does not bar consideration of his claim. *Coleman*, 168 Ill. 2d at 522-23.

Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel. A petitioner who contends that appellate counsel rendered ineffective assistance of counsel must show that the failure to raise an issue on direct appeal was objectively unreasonable and that the decision prejudiced petitioner. *People v. West*, 187 Ill. 2d 418, 435 (1999). Unless the underlying issue is meritorious, petitioner suffered no prejudice from counsel's failure to raise it on direct appeal. *West*, 187 Ill. 2d at 435. We, therefore, must determine whether petitioner's underlying ineffective assistance of trial counsel claim would have been successful if raised on direct appeal.

Petitioner's ineffective assistance of trial counsel claim is meritless. In *Morgan v. Illinois*, 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222 (1992), the United States Supreme Court held that a defendant is entitled, *upon his request*, to inquire whether a prospective juror would automatically impose the death penalty no matter what evidence was presented in aggravation and mitigation. *Morgan*, 504 U.S. at 736, 119 L. Ed. 2d at 507, 112 S. Ct. at 2233. Nothing in *Morgan*, however, suggests that defense counsel is constitutionally required to ask such a question, and petitioner fails to cite any authority to support such a proposition. Indeed, the fact that a defendant is entitled to such *voir dire* questioning only upon his request demonstrates that defense counsel is under no constitutional obligation to ask such a question. See *People v. Caballero*, 179 Ill. 2d 205, 221 (1997) (holding permissive nature of reverse-*Witherspoon* question renders it "not ' "so central to an accurate determination of innocence or guilt" ' as to constitute a component of basic due process"), quoting *People v. Flowers*,

138 Ill. 2d 218, 241-42 (1990), quoting *Teague v. Lane*, 489 U.S. 288, 313, 103 L. Ed. 2d 334, 358, 109 S. Ct. 1060, 1077 (1989). It bears repeating that "[t]here is no precise catechism or formula of questions that can precisely identify those prospective jurors whose opposition to the death penalty will prevent them from fulfilling their duties as jurors." *People v. Cloutier*, 156 Ill. 2d 483, 499 (1993). The same holds true for questions intended to identify pro-death penalty bias among prospective jurors. The mere fact that a "reverse-*Witherspoon*" question might have been helpful in identifying such bias does not render trial counsel's failure to ask every veniremember such a question objectively unreasonable. See *People v. Terrell*, 185 Ill. 2d 467, 485 (1998).

Moreover, petitioner concedes that his trial counsel did ask one member of the venire whether every murder conviction deserved the death penalty. This fact demonstrates that defense counsel was aware of defendant's entitlement to ask such a question and that counsel's failure to ask every other venire member this question was a matter of trial strategy rather than ineptitude or unfamiliarity with the law. Under these circumstances, petitioner has failed to overcome the strong presumption that his trial counsel's failure to "reverse-*Witherspoon*" every member of the venire was the product of sound trial strategy, not incompetence. *People v. Hobley*, 182 Ill. 2d 404, 454 (1998).

Petitioner next argues that his trial counsel was ineffective for failing to introduce the photographs of his hands at trial. These photographs, petitioner contends, depict wounds which would have corroborated his defense at trial that the victim was the aggressor and provoked petitioner's conduct. Petitioner argues that his appellate counsel was ineffective for failing to raise this argument on direct appeal.

Defense counsel's decision not to introduce the photographs of petitioner's hands at trial was not objectively unreasonable. Karen Shields, an experienced public defender, after consultation with three of her colleagues, made a strategic decision not to use the photographs because she thought that the photographs would not be helpful to the defense. Shields feared that the State would actually use the photographs against petitioner to highlight the slight nature of the wounds on petitioner's hands compared to the devastating stab wounds inflicted on the victim by petitioner. We agree with the trial court's assessment that defense counsel's decision not to use the photographs at trial was a strategic choice made after thorough investigation of law and facts relevant to the plausible options available. As such, trial counsel's conduct is virtually unchallengeable. *People v. Gosier*, 165 Ill. 2d 16, 22 (1995), citing *People v. Franklin*, 135 Ill. 2d 78, 117 (1990), quoting *Strickland v. Washington*, 446 U.S. 668, 690, 80 L. Ed. 2d 674, 695, 104 S. Ct. 2052, 2066 (1984). The trial court's dismissal of petitioner's claim that his trial counsel was ineffective for failing to use the photographs at trial was not manifestly erroneous.

Petitioner's final argument is that his trial counsel was ineffective for failing to investigate and present mitigating evidence at sentencing regarding petitioner's medical and family background. In support of his claim, petitioner has attached a number of reports and affidavits to his post-conviction petition from witnesses who were not called to testify at his sentencing hearing. Dr. Michael Kovar conducted a psychological evaluation and neurological assessment of petitioner. Dr. Kovar concluded in his report that petitioner has a number of serious cognitive deficits, suggesting underlying organic brain damage and deteriorating neuropsychological functioning caused by long-term substance abuse and

traumatic head injury. Dr. Keenan Ferrell, a psychologist, determined that petitioner suffered from post-traumatic stress disorder as a result of being raped at age 12 and growing up in a violent environment. Dr. Ferrell concluded that petitioner was predisposed to act out violently. Dr. John R. Conte, a professor of social work and expert on childhood sexual abuse, expressed his opinion that petitioner's acts of violence are a direct result of the violence, abandonment, and history of betrayal experienced by petitioner throughout his lifetime.

Petitioner also included a number of affidavits from family members and friends who recounted petitioner's troubled family history, alcoholism and drug abuse, and the premature deaths of several family members, including the death of petitioner's step-father, Willie Scott, approximately two weeks before the murder. A report prepared by a mitigation specialist, Caryn Platt Tatelli, documented the depressed and impoverished environment in which petitioner was raised, his limited education, the sexual and emotional abuse he suffered as a child, as well as his extensive background of substance abuse and criminality.

In order to secure a reversal of his death sentence, petitioner must show that his trial counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that, absent the errors, the jury would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *People v. Madej*, 177 Ill. 2d 116, 135 (1997), quoting *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069. Even if we assume that petitioner has shown that his trial counsel was deficient for failing to investigate and present this additional evidence at sentencing, we hold that petitioner has failed to demonstrate that he suffered any prejudice from this deficiency.

Initially, we note that most of the evidence attached

to petitioner's post-conviction petition is not inherently mitigating. A jury, for example, may consider the evidence regarding petitioner's mental and psychological impairments as either mitigating or aggravating, depending on whether the evidence evokes compassion or demonstrates possible future dangerousness. *Coleman*, 183 Ill. 2d at 406. Similarly, evidence of a defendant's troubled childhood, including evidence that a defendant was physically or sexually abused as a child, has no inherently mitigating value and may, in fact, actually be aggravating. *People v. Madej*, 177 Ill. 2d 116, 140 (1997). Likewise, the mere fact that petitioner views his history of drug and alcohol abuse as mitigating does not require the jury to do the same. *Madej*, 177 Ill. 2d at 138-39 (stating a defendant's drug history may have no mitigating value and may even be aggravating).

In this case, the jury could easily have concluded that much of the evidence regarding petitioner's psychological impairments was, in fact, aggravating. Dr. Ferrell's psychological evaluation, for example, concludes that petitioner is "effectively predisposed to overreact and strike out against others with violent gestures." Similarly, Dr. Conte concluded that petitioner has a history of victimizing others and that he has a "warped and violent" notion of "maleness" such that "any action or word which is perceived as questioning his maleness would be a serious threat and require an excessive response." Such conclusions are powerful evidence of petitioner's future dangerousness.

Even many of the affidavits from petitioner's family members contain highly damaging aggravating evidence. For example, John Branch, petitioner's adoptive brother, averred in his affidavit that petitioner has a history of being sexually aggressive and that he molested his half-brother Thomas when Thomas was 10·or 11 years old. Hattie Ivey, the mother of petitioner's daughter Sadie,

stated that petitioner never took care of his daughter and was never there to support her. Ivey remarked that petitioner was constantly in and out of jail and that he told her that he could make more money by doing illegal things than by working. Virtually all of these affidavits attest to petitioner's extensive abuse of drugs and alcohol.

Even if the jury could have viewed the evidence attached to the post-conviction petition as mitigating, the fact that a defendant was physically or sexually abused as a child or has impaired cognitive abilities does not preclude imposition of a death sentence when that evidence is outweighed by aggravating evidence. *Madej*, 177 Ill. 2d at 139-40. Here, the aggravating evidence supporting the jury's imposition of the death penalty was overwhelming. Petitioner has an extensive criminal record spanning three decades. Petitioner has a prior conviction for murder, as well as convictions for armed robbery, criminal trespass to a vehicle, burglary, resisting arrest, disorderly conduct, unlawful use of a weapon, attempted aggravated criminal sexual assault, kidnaping and unlawful restraint. Petitioner has a history of victimizing others. The State presented evidence at sentencing that petitioner was caught having sex with a mentally retarded woman and attempted to sexually molest his own daughter Sadie McGee when she was 8 years old. (In her affidavit attached to the post-conviction petition, Sadie now admits that petitioner actually did molest her.)

The circumstances surrounding the murder in this case are particularly brutal and heinous. Petitioner stabbed the victim, who was approximately 5 feet 2 inches tall and weighed only 90 pounds, 12 times and inflicted 10 more incise wounds. Petitioner committed the murder in the presence of the victim's six-year-old son. A neighbor who responded to the screams of the victim testified that she saw petitioner having sex with the victim while the knife still protruded from her chest.

In light of the foregoing evidence, petitioner has not shown a reasonable probability that the outcome of his sentencing hearing would have been different if his trial counsel had presented the additional evidence attached to the post-conviction petition. We, therefore, hold that petitioner has failed to make a substantial showing that his right to effective assistance of counsel at his sentencing hearing was violated.

## CONCLUSION

For the reasons stated, the judgment of the circuit court of Cook County dismissing petitioner's post-conviction petition is affirmed. The clerk of this court is directed to enter an order setting Thursday, September 14, 2000, as the date on which the sentence of death entered in the circuit court is to be imposed. The petitioner shall be executed in the manner provided by law. 725 ILCS 5/119—5 (West 1996). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, the warden of Tamms Correctional Center, and the warden of the institution where petitioner is now confined.

*Judgment affirmed.*

CHIEF JUSTICE HARRISON, concurring in part and dissenting in part:

I agree that Childress' convictions should not be disturbed. In my view, however, his sentence of death cannot be allowed to stand. For the reasons set forth in my partial concurrence and partial dissent in *People v. Bull*, 185 Ill. 2d 179 (1998), the Illinois death penalty law violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). Childress' sentence of death should therefore be vacated, and the cause should be

remanded for imposition of a sentence of imprisonment. 720 ILCS 5/9—1(j) (West 1996).