2020 IL App (2d) 180066-U
No. 2-18-0066
Order filed May 5, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 02-CF-2763 |
| WILLIAM J. PEARSON, | ) ) ) | Honorable Brendan A. Maher, |
| Defendant-Appellant. | ) | Judges, Presiding. |

PRESIDING JUSTICE BIRKETT delivered the judgment of the court.
Justices Zenoff and Hudson concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant's statutory speedy-trial claim was not cognizable in his postconviction petition; his allegation of ineffective assistance of appellate counsel for failure to raise the speedy-trial claim on appeal failed to make a substantial showing of constitutional deprivation or to allege prejudice; as a substantive matter, the trial court did not clearly abuse its discretion in holding that the State demonstrated due diligence.

¶ 2   Defendant, William J. Pearson, appeals from the second-stage dismissal of his postconviction petition.  In August 2003, defendant was convicted of the first-degree murder (720

ILCS 5/9-1(a)(2) (West 2002))[1] of Scott R. Bowers and sentenced to a 50-year term of imprisonment. Defendant appealed to this court, raising only the single issue of whether the trial court erred in admitting other-crimes evidence that defendant possessed illegal drugs at the time of this arrest. We affirmed. *People v. Pearson*, No. 2-04-0815 (May 24, 2006) (unpublished order under Illinois Supreme Court Rule 23). In March 2007, defendant filed his *pro se* postconviction petition. It was advanced to the second stage and, in August 2016, defendant's amended postconviction petition was filed. Upon motion by the State, defendant's amended postconviction petition was dismissed. On appeal, defendant argues that the trial court erred in dismissing his amended postconviction petition because the State failed to make the necessary showing of due diligence to obtain a 120-day extension to accomplish DNA testing, and his appellate counsel provided ineffective assistance for failing to raise the speedy-trial issue. We affirm.

¶ 3                                                    I. BACKGROUND

_____

[1] The jury returned a guilty verdict on "First Degree Murder (strong probability)" and a not guilty verdict on "First Degree Murder (forcible felony)." The "strong probability" theory of first-degree murder is codified in section 9-1(a)(2) of the Criminal Code (720 ILCS 5/9-1(a)(2) (West 2002)). Despite this, the indictment and sentencing order reflect the "forcible felony" theory of first-degree murder codified in section 9-1(a)(3) of the Criminal Code (720 ILCS 5/9-1(a)(3) (West 2002)). This apparent scrivener's error has never been raised and no conceivable prejudice accrues; we simply point out the incongruity: defendant has been convicted of first-degree murder under the "strong probability" theory, while his sentence mistakenly reflects the "forcible felony" theory.

¶ 4    We summarize the pertinent facts.  On the night of September 22, 2002, Scott Bowers was fatally shot in the head and the car he was driving crashed into an apartment building on Score Street in Rockford.  Three days later, defendant was arrested in connection with the offense.  Of relevance, when the crime scene was processed, two cigarette butts were taken into evidence for DNA testing.

¶ 5    On October 17, 2002, defendant, who had been in custody since his arrest, was arraigned for the offense.  On November 9, 2002, defendant filed, among other things, a motion to reduce his bond.  On November 13, 2002, the State moved to obtain blood from defendant.  On December 9, 2002, the trial court granted the State's motion to withdraw blood and denied defendant's bond motion.  Defendant had a pending motion for a protective order to receive copies of the discovery in his case.  The matter was continued several times on defendant's motion for a protective order and on his renewed bond-reduction motion.

¶ 6    On January 31, 2003, defendant's renewed bond-reduction motion was denied.  When the substitute public defender indicated he wished to continue the case by agreement, defendant interjected.  Following an off-the-record consultation, defendant demanded trial.  The trial court set the matter for an April 7, 2003, trial.  During the hearing that day, the court queried the State about the progress of the scientific testing.  The State replied that defendant's blood sample had been taken and delivered to the lab, but the testing had not been completed.

¶ 7    On April 3, 2003, at the final pretrial conference, the State moved for an extension to accomplish the DNA testing pursuant to section 103-5(c) of the Code of Criminal Procedure (Code) (725 ILCS 5/103-5(c) (West 2002)).  According to the prosecutor:

"The crime lab [was] not going to be finished with their testing of the evidence for DNA purposes until June 1[, 2003]. I had spoken to them months ago when I first sent them the evidence, and they informed me that it would be approximately two months. It's been approximately two months, so apparently they're more behind than they thought. So at this this time I don't believe I can proceed to trial."

Defendant objected to continuing the trial.

¶ 8    The following colloquy ensued:

"THE COURT: Jury status this morning. You consulted with your client, Mr. Doll [(defense counsel)]?

MR. DOLL: Yes. It's my understanding the State would be making a motion for continuance, and we'd be opposed to that motion.

MS. MEASON [(prosecutor)]: For the reasons I previously stated, I would ask to [*sic*] the first June setting.

We don't have DNA evidence. I will follow that up with a written motion to continue, citing the statutory section that does allow the State additional time for testing of DNA evidence, since by my calculations, that date would be two days over the 120 days.

THE COURT: What date would that be again?

MS. MEASON: June 2. If the Court would like, I can set — we can set this for status to address the written motion. I don't know how the Court wants to proceed on that.

THE COURT: I will require you to file a written motion in support of your request.

Mr. Doll, any other comment?

MR. DOLL: No, your Honor.

THE COURT: I refer you to [section 103-5(c) of the Criminal Code (725 ILCS 5/103-5(c) (West 2002))].

'If the Court determines that the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later day, the court may continue the cause on application of the State.'

And that — also, that section talks about DNA testing that is material to the case and that there are reasonable grounds to believe that such results may be obtained at a later day, the court may continue the case at the request of the State for not more than an additional 120 days.

So, [defendant], in response to the State's motion, your objection to the request for continuance, the law specifically provides for DNA testing, the Court can continue the case.

I need to know, however, is this evidence of a material nature?

MS. MEASON: Yes, it would link this defendant to the crime scene.

THE COURT: I do find the State exercised due diligence several months ago delivering that evidence to the crime lab, and it is material to the case.

The motion is granted over objection of the defendant pursuant to the statute cited, and I will assign a new status date to determine return of the evidence."

¶ 9    Defendant orally objected, arguing that there was other evidence in the discovery he had received that would satisfy the State's requirement of showing that it was defendant himself who was on the scene.  Based on this, defendant contended that the DNA evidence was not material to

the State's case. The trial court rebuffed defendant's oral objection but expressly stated that, based on the State's forthcoming written motion, defendant could raise the issue of the materiality of the DNA evidence, or any other objection, as necessary.

¶ 10    On April 7, 2003, the State filed its written motion for a continuance pursuant to section 103-5(c). Defendant did not file a motion or objection to the written motion for continuance at that time.

¶ 11    On June 4, 2003, the matter was before the trial court for status and to set a trial date. The State acknowledged that it had received the results of the DNA testing from the lab, and without waiving his objection and demand for trial, and based on defense counsel's schedule, trial was scheduled for August 4, 2003.

¶ 12    On August 4, 2003, defendant filed a motion to dismiss based on a speedy-trial violation. Defendant argued he had not been brought to trial within 120 days, and that, between the date of the extension granted pursuant to section 103-5(c) and the trial date, 124 days had elapsed, which was greater than the 120-day extension allowed by section 103-5(c). In denying defendant's motion to dismiss, the trial court ruled:

> "The Court has reviewed the statute, [section 103-5(c) (725 ILCS 5/103-5(c) (West 2002))], the appropriate language. It says, 'If the Court determines that the State has exercised without success due diligence to obtain results of DNA testing that is material to the case and that there are reasonable grounds to believe that such results may be obtained at a later day, the Court may continue the cause on application of the State for not more than an additional 120 days.'

Of course, an issue presented by the Motion to Dismiss is what is meant by 'additional 120 days.' The Court does note that the [statute] does not say an additional 120 from the date the motion was filed. It just says generally 'additional 120 days.' The language is construed in [*People v. Johnson*, 323 Ill. App. 3d 284 (2001)]. The Court will adopt the evaluation of that case or the statutory construction announced in that case where it says, 'The Trial Court,' I quote, 'properly set the 120-day continuance requested by the State in prosecution for armed robbery to enable it to obtain DNA test results to commence upon [the] conclusion of [the] 120-day statutory speedy trial period, rather than from [the] date [the] State's motion for such continuance was granted.'

That's what the case is here. I rule that the 120-day rule has not been violated; therefore, the Motion to Dismiss is denied."

¶ 13 The trial ensued. The evidence showed that defendant had been near the victim's car at the time of the offense. One witness observed defendant running alongside the car and hearing a gunshot just before the vehicle crashed into the apartment building. One witness testified that, on the evening of the offense, defendant gave him a .38 caliber chrome handgun to hold. That witness eventually gave the gun to the police; testing revealed that it the weapon matched a shell casing found at the scene. Defendant's statement to the police admitted that he had pointed a gun at the driver of the car to scare him, and that when the driver tried to drive away, defendant's arm was jostled causing the gun to discharge. Defendant's girlfriend testified that defendant instructed her to attribute the shooting to an individual nicknamed "Spade." The jury returned a not guilty verdict

on count I of the indictment (720 ILCS 5/9-1(a)(3) (West 2002)) and a guilty verdict on count II of the indictment (720 ILCS 5/9-1(a)(2) (West 2002)).[2]

¶ 14    On September 9, 2003, defendant filed a timely motion for a new trial. Among other things, defendant alleged that the trial court erred in denying his motion to dismiss due to the claimed speedy-trial violation. On October 1, 2003, defendant filed a *pro se* motion for a new trial alleging the ineffectiveness of his trial counsel. On October 2, 2003, the trial court denied the motion for a new trial filed by counsel. On June 14, 2004, the trial court denied defendant's motion alleging ineffective assistance of counsel.

¶ 15    On July 26, 2004, the matter proceeded to sentencing. The trial court sentenced defendant to a 50-year term of imprisonment. Defendant timely appealed. On appeal, defendant raised the single issue regarding whether the trial court properly admitted evidence that defendant possessed illegal drugs at the time of his arrest. We affirmed. *Pearson*, No. 2-04-0815.

¶ 16    On March 28, 2007, defendant filed a *pro se* postconviction petition that serves as the basis of the instant appeal. In May 2007, defendant's postconviction petition was advanced to the second stage. Some delay was encountered determining whether defendant wished to have counsel appointed to represent him during the second-stage proceedings, and, on February 20, 2008, counsel was appointed. Postconviction counsel encountered difficulties in communicating with defendant and his supporting witnesses, resulting in the continuance of the matter until, on August 16, 2016, counsel filed defendant's amended postconviction petition. Two of defendant's claims from the amended postconviction petition are germane: first, defendant argued that the trial court

---

[2] See footnote 1 above.

erred in granting the State's motion to continue pursuant to section 103-5(c) (ground four in the amended petition). Defendant contended that the evidence was not material, so the motion was made in bad faith to evade the 120-day speedy trial period. Second, defendant argued that his appellate counsel was ineffective for failing to raise the speedy-trial issue on direct appeal (ground seven).

¶ 17    The State moved to dismiss defendant's amended postconviction petition. On August 21, 2017, the trial court heard argument. Trial counsel, apparently prompted by defendant, mentioned the case of *People v. Battles*, 311 Ill. App. 3d 991 (2000), but focused on the aspect of materiality of the DNA evidence. The court also allowed defendant, *pro se*, to make some statements. The State was granted leave to file a response focused on defendant's August 21 statements and the response discussed *Battles*. Following its consideration of the record of the trial and postconviction proceedings, as well as the parties' arguments, the trial court granted the State's motion to dismiss.

¶ 18    First, the trial court held that, as an independent claim, the speedy-trial contention in ground four of the amended postconviction petition could have been raised on direct appeal and was thus barred by the doctrine of *res judicata* or waiver. Alternatively, and specifically addressing defendant's contentions, the trial court held that the facts supporting the speedy-trial ground existed at the time of the jury trial and that defendant had raised the claim and had preserved the claim for direct appeal by raising it in his posttrial motion. However, the claim was not pursued on direct appeal and was barred from postconviction consideration by the doctrine of *res judicata*. Moreover, the trial court appears to have rejected on substantive grounds defendant's arguments

regarding the alleged speedy-trial violation. As a result, the trial court granted the State's motion to dismiss ground four of the amended postconviction petition.

¶ 19    Turning to the ineffective-assistance-of-appellate-counsel claim, the trial court noted that the amended petition provided "a one sentence, factually unsupported claim" effectively incorporating grounds one through six (and pertinently ground four) by "assert[ing] that his 'appellate counsel' (in the direct appeal that resulted in the Second District's Rule 23 Order in this case) was 'ineffective' for failing to assert [defendant's] 'ineffective assistance' claims with respect to his representation by [trial counsel] at his jury trial." The trial court noted that defendant included no factual support, such as affidavits specifically addressing appellate counsel's arguments, and no allegations (even conclusory ones) that appellate counsel's appraisal of the merits of the properly preserved potential appellate claims was erroneous. Finally, the court observed that the claim was unsupported by citation to authority and unsupported by argument or analysis of how defendant was prejudiced (*i.e.*, that the claim had a reasonable probability of resulting in reversal of the trial court's judgment). The court held that defendant's "single-sentence, factually and legally unsupported claim of 'ineffective assistance' directed at his appellate counsel [was] patently without merit" and granted the State's motion to dismiss ground seven.

¶ 20    Defendant timely appeals the dismissal of his amended postconviction petition.

¶ 21                                  II. ANALYSIS

¶ 22    On appeal, defendant attacks the trial court's judgment granting the State's motion to dismiss the amended postconviction petition. Defendant argues first that, as a substantive matter, the State failed to demonstrate that it had exercised due diligence within the original 120-day term

in attempting to obtain the results of the DNA testing before requesting the extension for testing pursuant to section 103-5(c). Next, defendant argues that appellate counsel was ineffective for failing to raise the speedy-trial-violation issue on direct appeal. Before we address the issues raised by defendant on appeal, we first discuss the principles governing postconviction petitions and our review.

¶ 23                    A. Principles Governing Postconviction Petitions

¶ 24    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a remedy to a criminal defendant whose state or federal constitutional rights were substantially violated at trial or sentencing. *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 19. As such, it is not a direct appeal from the underlying judgment, but a collateral attack on it. *Id.* The defendant is constrained to raising constitutional issues that were not and could not have been raised on direct appeal. *Id.*

¶ 25    The Act contemplates a three-stage process for adjudicating a postconviction petition. *People v. Hommerson*, 2014 IL 115638, ¶ 7. In the first stage, the trial court is to determine whether the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018). The court independently assesses whether the petition's allegations, liberally construed and taken as true, set forth the gist of a constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). If the petition is advanced to the second stage, the State may answer the petition or move to dismiss it. *People v. Dupree*, 2018 IL 122307, ¶ 28. If the State moves to dismiss the petition, the trial court must decide whether to grant the motion or to advance the petition to the third stage. *Id.* A petitioner is entitled to an evidentiary hearing only if the allegations of the petition along with the

affidavits, record, and evidence make a substantial showing of a deprivation of constitutional rights (either state, federal, or both). *Id.*

¶ 26    At the second stage, the trial court does not engage in fact-finding or determinations of credibility because those determinations are reserved for the third, evidentiary, stage of the proceedings. *Id.* ¶ 29.  At the second stage, the court examines the petition to determine its legal sufficiency, and any allegations not affirmatively rebutted by the record are taken as true. *Id.*  The substantial showing of a constitutional violation required at the second stage is a measure of the legal sufficiency of the well-pleaded allegations of a constitutional violation in the petition, which, if proven at an evidentiary hearing, would entitle petitioner to relief. *Id.*  We review *de novo* the second-stage dismissal of a postconviction petition. *Id.*

¶ 27                        B. Statutory Speedy-Trial Violation

¶ 28    Defendant argues that the trial court abused its discretion in determining that the State exercised due diligence before requesting the extension pursuant to section 103-5(c) of the Code (725 ILCS 5/103-5(c) (West 2002)).  Section 103-5(c) provides:

> "If the court determines that the State has exercised without success due diligence to obtain results of DNA testing that is material to the case and that there are reasonable grounds to believe that such results may be obtained at a later day, the court may continue the cause on application of the State for not more than an additional 120 days."  725 ILCS 5/103-5(c) (West 2002)).

¶ 29  When the State orally (and later, in writing) moved to invoke the 120-day extension, it also noted that it had delivered the samples to the lab "months ago" and had just learned that the testing could not be completed before the beginning of June.  The trial court expressly requested an

explanation about the materiality of the evidence, and the State replied that the DNA evidence was material because it "would link this defendant to the crime scene." The trial court held: "[the court does] find the State exercised due diligence several months ago delivering that evidence to the crime lab, and it is material to the case." In its written motion, the State provided a timeline of the handling of the evidence, noting that it had requested the testing immediately, that, on September 27, 2002, and December 17, 2002, the evidence had been delivered to the lab for testing, and that the lab had not yet tested the evidence but expected to have completed the testing by June 1, 2002. It appears that the December 17, 2002, submission of evidence was defendant's blood standard; on November 13, 2002, the State had moved to collect defendant's blood and the motion was not decided for about a month due to counsel's and the trial court's occasional unavailability due to illness and scheduling conflicts.

¶ 30    Based on this factual background, defendant argues that the State did not sufficiently demonstrate its due diligence in seeking the DNA evidence under section 103-5(c). Defendants statutory argument, however, is misplaced.

¶ 31    It is well established that a claim that the State did not bring a defendant to trial within the statutory 120-period is not constitutional in scope. *People v. French*, 46 Ill. 2d 104, 107 (1970) ("an allegation of a violation of the 120-day rule in bringing a defendant to trial is not constitutional in scope"); *People v. Tatum*, 2019 IL App (1st) 162403, ¶ 83 (statutory speedy-trial claim may not be raised in a postconviction petition because it is not of constitutional dimension). Here, defendant's claim is based only on the statutory speedy-trial right; defendant does not argue or allege the elements of a constitutional claim, notably, prejudice is neither alleged nor argued. See *People v. Crane*, 195 Ill. 2d 42, 48 (2001) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972))

(the factors to be considered in a constitutional speedy-trial claim include length of the delay; reasons for the delay; prejudice, if any, accruing to the defendant; and defendant's assertion of the speedy-trial right). Additionally, we note that defendant couches his argument solely in terms of a violation of the 120-day statutory period: *e.g.*, "Violation of the speedy trial statute \*\*\* warrants a reversal of conviction;" "the trial court abused its discretion by not holding the [S]tate to their burden to prove that it exercised due diligence to obtain the lab results within the original 120 day speedy trial term \*\*\*."

¶ 32    Because defendant raises only a statutory speedy-trial claim, it is not cognizable in a postconviction petition. Accordingly, we hold that the trial court properly dismissed defendant's substantive speedy-trial claim at the second stage of the postconviction proceeding.[3]

¶ 33                    C. Ineffective Assistance of Appellate Counsel

¶ 34    Defendant also argues that his appellate counsel was ineffective for failing to raise the speedy-trial issue on direct appeal. Defendant correctly notes that an ineffective-assistance claim circumvents the doctrines of *res judicata* and waiver in a postconviction proceeding. *People v.*

---

[3] Although the trial court did not decide defendant's postconviction speedy-trial claim on this ground, we may affirm the trial court's judgment on any ground supported in the record. *People v. Snow*, 2012 IL App (4th) 110415, ¶ 17 ("a reviewing court may affirm a trial court's dismissal at the second stage [of postconviction proceedings] on any grounds substantiated by the record, regardless of the trial court's reasoning"). As a result, we need not address the grounds of *res judicata* or forfeiture or the alternative substantive grounds relied upon by the trial court.

*Childress*, 191 Ill. 2d 168, 175 (2000). In addition, it presents an appropriate way to get the statutory speedy-trial claim before the trial court in a postconviction petition.

¶ 35 A claim of ineffective assistance of appellate counsel is considered in the same fashion as a claim of ineffective assistance of trial counsel. *Id.* The defendant who alleges that appellate counsel was ineffective must show that the decision not to raise the issue was objectively unreasonable and that the decision resulted in prejudice to the defendant. *Id.* Unless the underlying issue is meritorious, the defendant cannot have been prejudiced by the appellate attorney's failure to raise it. *Id.*

¶ 36 Before addressing the merits of defendant's claim, we note that the trial court was nevertheless justified in dismissing the ineffective-assistance claim. In the amended postconviction petition, defendant's allegation of ineffective assistance amounted to the following single sentence: "The defendant's appellate counsel was ineffective and Defendant was denied his rights under the Sixth and Fourteenth Amendments to the U.S. Constitution when appellate counsel failed to allege and argue each of the previously stated Constitutional violations." As noted, the elements of an appellate ineffective-assistance claim include: (1) counsel's decision not to raise the issue was objectively unreasonable; and (2) resulting prejudice from the decision. *Childress*, 191 Ill. 2d at 175. Obviously, defendant's single-sentence, factually bereft, allegation in the amended postconviction petition does not make the necessary substantial showing of deprivation of defendant's right to effective assistance of appellate counsel. *Dupree*, 2018 IL 122307, ¶ 28. In defendant's substantive speedy-trial claim, defendant only alleged that the DNA testing was not material and the extension was sought in bad faith to avoid the 120-day deadline for holding trial. We note that the trial court determined that the evidence was material: even though defendant

asserted that his girlfriend lived at the location of the offense, so a cigarette butt with his DNA could have been left at any time, had none of defendant's DNA been found, it would have substantially undercut the State's eyewitnesses, who observed the offense at night and under uncertain lighting conditions. Thus, the test could have been reasonably exculpatory as well as inculpatory (as the butt was found in the precise area the victim's car occupied at the time of the offense). For this reason, the trial court was justified in dismissing the claim of ineffective assistance of appellate counsel.

¶ 37    In addition, we note that the argument that the State did not exercise due diligence in obtaining the DNA testing before it requested the extension pursuant to section 103-5(c) is made for the first time on appeal. It is axiomatic that that an issue may not be raised for the first time on appeal. *Super Mix of Wisconsin, Inc. v. Natural Gas Pipeline Co. of America, LLC*, 2020 IL App (2d) 190034, ¶ 25. A close corollary is that the defendant may not offer an argument in support of an appellate-ineffective-assistance claim for the first time on appeal where that argument was not raised in support of his or her postconviction petition in the trial court. *People v. Shief*, 2016 IL App (1st) 141022, ¶¶ 53-54. Thus, the argument is not properly before this court on appeal. This rationale also precludes our review resulting in an affirmance of the trial court's judgment.

¶ 38    The foregoing preliminary considerations notwithstanding, even if we address the merits of defendant's argument, it fails to persuade. Defendant relies on *Battles*, 311 Ill. App. 3d 991, in arguing that the State did not exercise due diligence under section 103-5(c). In *Battles*, the Fifth District devised a painstaking scrutiny by which to measure the State's efforts at securing DNA evidence before requesting the section 103-5(c) extension:

"the State should tender a full explanation of each and every step taken to complete DNA testing within the 120-day speedy trial term. The steps articulated should comprise a course of action that a reasonable and prudent person intent upon completing tests within 120 days would follow. Further, the showing should explain why the efforts engaged in fell short of their objective and resulted in an unavoidable need for delay." *Id.* at 998.

The court concluded that the State had consumed most of the 120-day speedy-trial period debating whether to submit evidence for DNA testing and utilized section 103-5(c) as a means of evading the time limit, instead of completing testing that otherwise, through no fault of its own, could not be timely completed. *Id.* at 1004.

¶ 39　This court repudiated the rigid scrutiny of *Battles* in *People v. Spears*, 395 Ill. App. 3d 889 (2009). We rejected *Battles* as not being grounded in the language of the statute, but we ameliorated the rejection by noting that the three requirements of *Battles* could be useful considerations in the required case-by-case determination of due diligence under the statute. *Id.* at 895.

¶ 40　Here, unlike *Battles*, there is no question of the State seeking to evade the speedy-trial term by employing section 103-5(c). The State promptly submitted the relevant evidence to the lab within a day of defendant's arraignment. It also sought permission to obtain a blood standard from defendant withing a reasonable amount of time and, while the decision granting permission was delayed due to the trial court's and defense counsel's occasional unavailability due to illness or scheduling conflicts, the State promptly submitted the blood standard to the lab and was told that the testing would be completed in a couple of months. Nearly five months later, the lab indicated that the tests were not complete and could not be completed for approximately another two months.

At this point, the State sought the section 103-5(c) extension. The trial court held that the State had exercised due diligence based on these facts.

¶ 41    We review the trial court's judgment on whether a state exercised due diligence for a clear abuse of discretion. *People v. Swanson*, 322 Ill. App. 3d 339, 342 (2001). A clear abuse of discretion occurs when the trial court's judgment is arbitrary, fanciful, unreasonable or where no reasonable person would adopt the view taken by the trial court. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009). Based on the foregoing, we cannot say that the trial court engaged in a clear abuse of discretion in holding that the State had exercised due diligence. Quite clearly, the State's explanation does not approach the thoroughness required under the *Battles* requirements. However, the *Battles* decision was in part motivated by the State's effort to evade the speedy-trial term. Here, no such abuse is apparent. Instead, the State moved quickly to obtain the necessary DNA testing. That testing was material to the case and the results linked defendant to the scene of the crime. While the State could have done better,[4] its efforts were reasonable and constituted due diligence, and the trial court's determination did not constitute a clear abuse of discretion.

¶ 42    For the foregoing reasons, then, defendant has failed to adequately present his claim of ineffective assistance of appellate counsel. Alternatively, on the merits, the trial court did not

---

[4] See *Spears*, 395 Ill. App. 3d at 896 (while it may have been preferable for the State to have pushed the lab to complete testing more quickly, in light of the State's promptness and lack of unreasonable delay (unlike *Battles*, where there was no evidence of expedience and the delay was calculated to evade the speedy-trial limit), the State acted reasonably).

clearly abuse its discretion in holding that the State exercised due diligence under section 103-5(c).

¶ 43                                    III. CONCLUSION

¶ 44    For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

¶ 45    Affirmed.