NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220096-U

NO. 4-22-0096

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 30, 2023
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, <br>     Plaintiff-Appellee, <br>     v. <br> CHRISTOPHER A. ROBINSON, <br>     Defendant-Appellant. | ) Appeal from the <br> ) Circuit Court of <br> ) Winnebago County <br> ) No. 03CF3197 <br> ) <br> ) Honorable <br> ) Joseph G. McGraw, <br> ) Judge Presiding. |

---

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice DeArmond and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The appellate court affirmed the trial court's third-stage denial of defendant's amended postconviction petition.

(2) Trial counsel did not provide ineffective assistance in failing to base the pretrial motion to suppress defendant's confession on its alleged involuntariness, and appellate counsel did not provide ineffective assistance in failing to raise this issue on direct appeal.

(3) Defendant did not satisfy his burden of demonstrating a substantial constitutional violation at the third-stage evidentiary hearing.

(4) Postconviction counsel did not provide unreasonable assistance at the third-stage evidentiary hearing in attempting to demonstrate the claimed ineffectiveness of trial and appellate counsel.

¶ 2    Following a jury trial, defendant, Christopher A. Robinson, was convicted of first degree murder (720 ILCS 5/9-1(a)(2) (West 2002)) and sentenced to 50 years in prison. On direct appeal, the appellate court affirmed defendant's conviction and sentence. *People v. Robinson*, No.

2-07-0691 (April 20, 2009) (unpublished order under Illinois Supreme Court Rule 23). In February 2010, defendant filed a *pro se* petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)). The trial court summarily dismissed the petition, but the appellate court reversed and remanded for second-stage proceedings. *People v. Robinson*, 2012 IL App (2d) 100536-U. Thereafter, defendant, through counsel, filed an amended postconviction petition, asserting both trial and appellate counsel provided ineffective assistance. On remand, a different trial court judge granted the State's motion to dismiss the postconviction petition. Defendant appealed, and the appellate court reversed and remanded for third-stage proceedings. *People v. Robinson*, No. 2-17-0561 (December 18, 2019) (unpublished summary order under Illinois Supreme Court Rule 23(c)). On remand, a different trial court judge denied defendant's postconviction petition following the third-stage evidentiary hearing.

¶ 3 Defendant appeals, arguing the trial court erred in denying his amended postconviction petition following the third-stage evidentiary hearing. We affirm.

¶ 4 I. BACKGROUND

¶ 5 On November 26, 2003, defendant was charged by indictment with one count of first degree murder knowing such act created a strong probability of death or great bodily harm (720 ILCS 5/9-1(a)(2) (West 2002)) following the fatal shooting of Shontrelle Graham in October 2003. A jury convicted defendant of first degree murder and the trial court sentenced him to 50 years' imprisonment.

¶ 6 Defendant appealed, arguing the prosecutor's improper remarks during closing argument deprived defendant of a fair trial, and the appellate court affirmed. *Robinson*, No. 2-07-0691 (April 20, 2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 7 On February 1, 2010, defendant filed a *pro se* petition under the Act, arguing his

trial counsel was ineffective in connection with a pretrial motion to suppress his confession where he failed to present evidence of diminished mental capacity, purportedly establishing the involuntariness of the confession. (This motion was instead grounded on the purported illegality of defendant's detention at the time of his confession.) More specifically, defendant alleged he had informed trial counsel, *inter alia*, of having been (1) diagnosed with attention deficit disorder and a learning disability, (2) previously hospitalized for mental health issues, and (3) physically abused as a child. Defendant argued trial counsel's failure to base the pretrial suppression motion on his diminished mental capacity amounted to unreasonable performance and, but for this, there is a reasonable probability he would not have been convicted. The trial court summarily dismissed the petition, finding defendant's contentions of his trial counsel's ineffectiveness to be "frivolous and patently without merit." The court found defendant's claims of his appellate counsel's ineffectiveness "likewise frivolous and patently without merit."

¶ 8 Defendant appealed. The appellate court reversed and remanded for second-stage proceedings, holding "the failure to base *** the motion to suppress on the defendant's alleged diminished mental capacity arguably fell below an objective standard of reasonableness," and this failure arguably prejudiced defendant as a motion to suppress grounded on his diminished mental capacity and the alleged involuntariness of his confession arguably would have been granted. *Robinson*, 2012 IL App (2d) 100536-U, ¶¶ 21-22. The appellate court noted, had the motion been grounded on this basis and granted, "[t]he outcome of the trial arguably would have changed because the evidence against the defendant was not overwhelming." *Id.* ¶ 22.

¶ 9 Following remand for second-stage proceedings, defendant, through counsel, filed an amended postconviction petition. Defendant argued his trial counsel provided ineffective assistance by failing to present evidence at the hearing on the pretrial suppression motion regarding

his alleged diminished mental capacity even though both defendant and his mother had informed trial counsel of his condition. Defendant argued this amounted to unreasonable assistance which prejudiced him at trial, as his purportedly involuntary confession was read to the jury. Defendant additionally argued his appellate counsel was ineffective for failing to have raised trial counsel's ineffectiveness. A different trial court judge presided over the second-stage evidentiary hearing and granted the State's motion to dismiss. The court found the pretrial suppression motion would not have been granted even if the information as to defendant's mental health issues was presented and, therefore, he did not suffer prejudice from trial counsel's failure to present that information.

¶ 10      Defendant appealed the trial court's dismissal and the appellate court reversed and remanded for third-stage proceedings. *Robinson*, No. 2-17-0561 (December 18, 2019) (unpublished summary order under Illinois Supreme Court Rule 23(c)). Specifically, the appellate court found the trial court engaged in improper fact-finding and credibility determinations where the pertinent question at the second-stage evidentiary hearing is "whether the petition and accompanying documentation make a substantial showing of a constitutional violation." *Id.* ¶¶ 7-10. The appellate court also directed the case be assigned to a different judge for third-stage proceedings. *Id.* ¶ 11.

¶ 11      Defendant was the only witness postconviction counsel called to testify at the third-stage evidentiary hearing. Defendant testified about being interrogated by Rockford police detectives and how Detective Mark Jimenez transcribed defendant's verbal statements. Defendant testified he was unable to read or understand the written transcript of his statements and Detective Jimenez read the transcript aloud to him. Defendant explained he had been prescribed psychiatric medication but was not taking it regularly prior to giving his statement. Defendant stated he had also been previously hospitalized for depression. According to defendant, he informed his trial

counsel of his mental health issues during their discussions at the jail. Defendant also testified to receiving Social Security benefits for his mental health issues.

¶ 12    During closing argument, postconviction counsel emphasized the only issue trial counsel raised in the pretrial suppression motion was the illegality of defendant's detention. Trial counsel did not raise any issue regarding defendant's purported mental health issues; had he done so, and had this suppression motion been granted, the outcome of the trial would likely have been different given the conflicting eyewitness accounts as to the identity of the shooter. Postconviction counsel noted affidavits and medical records were attached to the instant petition, and those were the only evidence he had given the unavailability at that point of additional records. Postconviction counsel requested the trial court grant the petition and grant defendant a new trial.

¶ 13    For its part, the State argued generally a defendant's mental health issues do not by themselves render a confession involuntary. The State pointed out defendant had an eleventh-grade education at the time he gave his statements, he had been apprised of his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)) and signified his comprehension thereof, and there was no allegation the police engaged in any mental or physical abuse of defendant which could undermine the voluntariness of his confession. The State argued trial counsel could not have been ineffective in failing to base the pretrial suppression motion on defendant's mental health issues and, derivatively, appellate counsel could not have been ineffective for failing to raise this issue. Moreover, the State asserted the documents attached to the petition were inadmissible hearsay. The State then referred to the trial testimony of various detectives pertaining to how defendant acknowledged his understanding of his *Miranda* rights and agreed to speak, was able to read his statements aloud, and was fit, alert, and responsive during the interrogations.

¶ 14    The trial court denied defendant's petition, finding, "[t]he evidence presented by

[defendant] in support of his amended petition for postconviction relief utterly fail[s] to establish that [his] mental health issues, if any, rendered him incapable of understanding the statement taking process." Therefore, "trial counsel was not ineffective for not raising those issues." The court concluded, "[i]t is axiomatic that appellate counsel could not be ineffective [f]or failing to raise matters outside the trial court record which are utterly unsubstantiated anyway."

¶ 15        This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17        On appeal, defendant argues his postconviction counsel provided unreasonable assistance by presenting only defendant's testimony at the hearing on the amended petition. Defendant contends postconviction counsel did not "present" any of the available documentation regarding defendant's mental health issues at the hearing (despite it being attached to the petition). According to defendant, had postconviction counsel done so, he would have established trial counsel's ineffectiveness in failing to present such evidence at the hearing on the pretrial suppression motion purportedly showing the involuntariness of the confession.

¶ 18        In response, the State argues a pretrial suppression motion based on the involuntary nature of defendant's confession would have been meritless and, as a result, trial counsel would not have been ineffective for failing to file such a motion. The State contends appellate counsel would therefore not have been ineffective for failing to raise this alleged involuntariness on direct appeal and postconviction counsel could not have provided unreasonable assistance in attempting to demonstrate trial and appellate counsel's ineffectiveness.

¶ 19        The Act sets forth three stages of review. At the first stage, the trial court may summarily dismiss a postconviction petition as frivolous and patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2020). If the petition is not dismissed, it advances to the second stage.

¶ 20        At the second stage of postconviction proceedings, the State may move to dismiss a petition or an amended petition pending before the court. *Id.* § 122-5. If the motion is denied, or if no motion to dismiss is filed, the State must answer the petition. *Id.* At this stage, the trial court must determine whether the petition and the accompanying documentation make a " 'substantial showing of a constitutional violation.' " *People v. Domagala*, 2013 IL 113688, ¶ 33, 967 N.E.2d 767 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246, 757 N.E.2d 442, 446 (2001)). If the petition satisfies this standard, the defendant is entitled to a third-stage evidentiary hearing at which the trial court acts as the fact finder and determines whether the evidence introduced demonstrates the defendant is entitled to relief. *Id.* ¶ 34.

¶ 21        At the third stage of a postconviction proceeding, the defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473, 861 N.E.2d 999, 1008 (2006). When a petition is advanced to a third-stage evidentiary hearing, where fact-finding and credibility determinations are involved, we will not reverse a trial court's decision unless it is manifestly erroneous. *Id.* "Manifest error is error that is 'clearly evident, plain, and indisputable.' " *People v. Beaman*, 229 Ill. 2d 56, 73, 890 N.E.2d 500, 510 (2008) (quoting *People v. Morgan*, 212 Ill. 2d 148, 155, 817 N.E.2d 524, 528 (2004)). Because the trial court heard testimonial evidence at the third-stage evidentiary hearing, its judgment will not be disturbed unless it is manifestly erroneous.

¶ 22        "The right to counsel in postconviction proceedings is wholly statutory." *People v. Perkins*, 229 Ill. 2d 34, 42, 890 N.E.2d 398, 402 (2007). As such "a petitioner is entitled only to the level of assistance required by the Act." *Id.* The Act requires "a 'reasonable' level of assistance." *Id.* By contrast, a claim of ineffective assistance of counsel is analyzed under the two-pronged performance-prejudice test established in *Strickland v. Washington*, 466 U.S. 668,

687 (1984). "Under this test, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Henderson*, 2013 IL 114040, ¶ 11, 989 N.E.2d 192. "A defendant's failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *Id.*

¶ 23 Underlying defendant's contention his postconviction counsel provided unreasonable assistance at the third-stage evidentiary hearing is the proposition his trial counsel was ineffective for failing to present evidence of defendant's diminished mental capacity at the hearing on the pretrial suppression motion. As the appellate court has explained:

"the decision of whether to file a motion to suppress is generally a matter of trial strategy and not subject to a claim of ineffective assistance of counsel. [Citation]. In order to establish prejudice resulting from defense counsel's failure to file a motion to suppress, a defendant must show a reasonable probability that (1) the motion to suppress would have been granted and (2) the outcome of the trial would have been different had the evidence been suppressed. [Citation]. In other words, defense counsel's failure to file a motion to suppress does not establish incompetent representation, if *the motion would have been futile.* [Citation]. Although the failure to file a motion to suppress is generally not a basis for an ineffective assistance of counsel claim, the failure to file a motion to suppress statements may constitute ineffective assistance of counsel if there is some indication that the statements were truly involuntary. [Citation]."

(Emphasis added.) *People v. Brickhouse*, 2018 IL App (3d) 150807, ¶ 40, 115 N.E.3d 248.

¶ 24 "The test of voluntariness is whether the defendant made the statement freely, voluntarily, and without compulsion or inducement of any sort, or whether the defendant's will was overcome at the time he or she confessed." (Internal quotation marks omitted.) *People v. Richardson*, 234 Ill. 2d 233, 253, 917 N.E.2d 501, 514 (2009). In determining whether a statement is voluntary, "a court must consider the totality of the circumstances of the particular case; no single factor is dispositive." *Id.* Among the pertinent factors are "the defendant's age, intelligence, background, experience, mental capacity, education, and physical condition at the time of questioning; the legality and duration of the detention; the presence of *Miranda* warnings; the duration of the questioning; and any physical or mental abuse by police, including the existence of threats or promises." *Id.* at 253-54.

¶ 25 If the evidence as to defendant's mental issues would not establish the involuntariness of his confession, there is no reasonable probability a motion to suppress grounded on such evidence would have been granted. Indeed, it would have been meritless to the point of being "futile." *Brickhouse*, 2018 IL App (3d) 150807, ¶ 40. Accordingly, trial counsel would not have been ineffective for failing to have brought such a motion, and appellate counsel would not have been ineffective for failing to raise this on direct appeal. See *People v. Easley*, 192 Ill. 2d 307, 329, 736 N.E.2d 975, 991 (2000) (noting "unless the underlying issues are meritorious, defendant has suffered no prejudice from counsel's failure to raise them on appeal"). There would have been no constitutional impediment to the publication of defendant's confession to the jury, and he therefore would not be able to satisfy his burden at the third-stage evidentiary hearing of making a substantial showing of a constitutional violation. His postconviction counsel therefore

would not have provided unreasonable assistance in his attempt to demonstrate the alleged antecedent ineffectiveness of trial and appellate counsel. We will first take up the issue of trial counsel's alleged ineffectiveness in relation to the pretrial suppression motion. To do so, we decide whether there is any "indication that [defendant's] statements [to police] were truly involuntary" such that filing the suppression motion defendant envisions would not have been "futile." *Brickhouse*, 2018 IL App (3d) 150807, ¶ 40. Through doing so, we decide whether the trial court's denial of defendant's amended postconviction petition, in which it held that the evidence "utterly fail[s] to establish that [his] mental health issues, if any, rendered him incapable of understanding the statement taking process," is manifestly erroneous.

¶ 26 Detective Robert Veruchi testified at the pretrial suppression hearing. On October 27, 2003, before questioning defendant, Veruchi (joined by Detective Barry Cunningham) asked defendant if he could read, write, and understand English. Defendant responded he could. Veruchi recalled defendant stating he had completed eleventh grade. Defendant was not under the influence of drugs or alcohol. Veruchi informed defendant of his *Miranda* rights through a "rights form" prepared by the Rockford Police Department. Defendant, without difficulty, read aloud a sentence reading, "Before we ask you any questions you must understand your rights." Thereafter, Veruchi read aloud to defendant four sentences from the rights form pertaining to his right to remain silent and right to speak to a lawyer and/or have a lawyer present. Defendant responded he understood these rights and initialed each of these sentences. Defendant then read aloud a sentence reading, "I understand these rights," stated he did in fact understand his rights and would speak with the detectives, and signed the bottom of the rights form.

¶ 27 Over the next several hours of questioning, the detectives took breaks, gave defendant soda, and allowed him to use the restroom and smoke. Eventually, Detective

Cunningham told defendant they were done speaking to him and were tired of listening to his lies. Defendant then stated he was going to tell the truth. He stated he was in the car during the shooting of Shontrelle Graham and knew the location of the murder weapon. The detectives transported defendant from the Public Safety Building to that location, discovered the weapon, and left the location to travel back to the Public Safety Building. On the way, detectives bought food for defendant. They returned to the Public Safety Building with defendant, allowed him to eat his food, and then resumed their questioning. By then, it was approximately 12:30 a.m. on October 28, 2003. Approximately 10 minutes later, defendant stated he would be willing to provide a written statement. Cunningham typed the statement as defendant spoke, read it aloud to defendant, and asked defendant if he wanted any changes made. Cunningham printed out the statement and gave it to defendant so he could read it and make any corrections. Defendant advised the statement was true and signed it.

¶ 28        According to Veruchi, defendant never requested an attorney or asked to no longer speak with the detectives. Defendant appeared physically alert and fit during questioning, gave responsive answers, and was not threatened in any way or promised anything to speak with the detectives. On cross-examination, Veruchi denied: (1) defendant asking if he could have a lawyer before questioning began; (2) telling defendant the presence of a lawyer was "irrelevant"; (3) Cunningham saying any such thing; (4) Cunningham poking defendant in the knee and chest, pushing defendant up against the wall of the interview room, or making any other physical contact with defendant during the questioning; (5) Cunningham telling defendant he could be allowed to go home like another person involved in the case if he "gave an accounting"; and (6) Cunningham telling defendant he would go to prison otherwise and  he "would make sure that the charge stood up." Veruchi also denied grabbing defendant by the hood of his sweatshirt.

- 11 -

¶ 29    Detective Mark Jimenez testified at trial. On October 30, 2003, Jimenez and Detective Andre Brass went to the Winnebago County jail to speak with defendant. According to Jimenez, defendant completed eleventh grade and was able to read and write English. Jimenez provided defendant the *Miranda* rights forms. Defendant read aloud the first sentence, which reads, "Before we ask you any questions, you must understand your rights." Defendant understood and initialed after this sentence. Jimenez then read aloud the same four sentences pertaining to defendant's *Miranda* rights Veruchi read three days earlier. Defendant understood his rights and initialed after each line on the form. Defendant read aloud the final sentence, which reads, "I understand these rights," initialed after that line, stated he understood his rights, and agreed to speak with the detectives.

¶ 30    According to Jimenez, "the whole time" of the questioning, defendant "had his chin in his chest." Jimenez asked defendant if he shot Graham, and defendant responded first by nodding his head and then, on Jimenez's request for defendant to respond verbally, said he did. Jimenez later asked defendant if he was willing to provide a written statement, and defendant said he was. Detective Brass typed the statement based on the answers defendant gave to their questions. The statement was printed and given to defendant. Defendant read the statement aloud and made one correction to it. Defendant wrote his initials at the beginning and end of each paragraph. Defendant, Brass, and Jimenez then signed the statement.

¶ 31    Following our review of the record, we hold the trial court's finding trial counsel was not ineffective in relation to the pretrial suppression motion was not against the manifest weight of the evidence. Defendant was 18 years old, had completed eleventh grade, and was physically fit and alert at the time of questioning. Defendant stated he was not under the influence of alcohol or drugs during questioning. Defendant was apprised of his *Miranda* rights before the

questioning began on both October 27, 2003, and October 30, 2003, and, on both dates, agreed to speak with the detectives. No evidence was presented to show defendant invoked either his right to remain silent or his right to an attorney at any time on either date. There was no evidence of any physical or mental abuse, or threats or promises, by the police at any time on either date. Additionally, on both dates, the detectives took breaks in the questioning, during which they permitted defendant to eat, drink, smoke, and use the restroom. Thus, on this record, no reasonable probability exists a pretrial suppression motion based on defendant's purported mental health issues at the time of his questioning would have been granted. *Brickhouse*, 2018 IL App (3d) 150807, ¶ 40.

¶ 32     Indeed, such a motion would have been "futile" under the circumstances. As there was no evidence defendant's confession was involuntary under the *Richardson* factors, "defense counsel's failure to file a motion to suppress [on this basis] does not establish incompetent representation." *Id.*; see *People v. Cooper*, 2013 IL App (1st) 113030, ¶¶ 66-68, 991 N.E.2d 789 (holding the defendant could not "establish that he was prejudiced by counsel's failure to focus on his mental deficiencies" in that there was no "reasonable probability [the] defendant's motion to suppress would have been granted").

¶ 33     As trial counsel was not ineffective for failing to base the pretrial suppression motion on this alleged involuntariness, appellate counsel was not ineffective in failing to raise this nonmeritorious issue on direct appeal. See *People v. Childress*, 191 Ill. 2d 168, 175, 730 N.E.2d 32 (2000) (explaining "[c]laims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel," and "[u]nless the underlying issue is meritorious, petitioner suffered no prejudice from counsel's failure to raise it on direct appeal"). Thus, the trial court's finding "[t]he evidence presented by [defendant] in

support of his amended petition for postconviction relief utterly fail[s] to establish that [his] mental health issues, if any, rendered him incapable of understanding the statement taking process" was not manifestly erroneous. As no constitutional impediment existed to the publication of his statements to the police at trial, defendant cannot satisfy his burden at a third-stage evidentiary hearing of making a substantial showing of a constitutional violation. Nor can defendant establish postconviction counsel's unreasonable assistance in connection with these postconviction proceedings.

¶ 34                                      III. CONCLUSION

¶ 35          For the reasons stated, we affirm the trial court's denial of defendant's amended postconviction petition.

¶ 36          Affirmed.