2016 IL App (2d) 140002
No. 2-14-0002
Opinion filed March 2, 2016

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 11-CF-2057 |
| JASON W. GRAY, | ) ) ) | Honorable Robert G. Kleeman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Schostok and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Jason W. Gray, appeals the second-stage dismissal of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) from his conviction, based upon a negotiated guilty plea, of possession of cocaine with the intent to deliver (720 ILCS 570/401(a)(2)(B) (West 2010)).  Defendant contends that his petition made a substantial showing that his guilty plea was tainted by the State's failure to disclose potentially impeaching evidence.  See *Brady v. Maryland*, 373 U.S. 83 (1963).  We affirm.

¶ 2    On September 22, 2011, the State indicted defendant for (1) possession of cocaine with the intent to deliver; and (2) possession of cannabis with the intent to deliver (720 ILCS 550/5(d) (West 2010)).  Both offenses allegedly occurred on September 1, 2011, when police executed a

warrant to search defendant's apartment at 1888 Somerset Drive in Glendale Heights. The warrant was based partly on information from a confidential informant (CI). It was supported by a complaint dated August 31, 2011, and signed by police investigator Matthew Hudak. In the complaint, Hudak stated that, on August 27, 29, and 30, 2011, he and fellow investigator Terrance O'Brien had worked with the CI, Schaumburg police investigator Mir,[1] and other officers to obtain drugs in controlled buys from defendant out of his apartment.

¶ 3 On April 2, 2012, defendant moved to quash his arrest and suppress evidence. The motion alleged that the warrant had not sufficiently limited the search and that the CI had been so unreliable as to negate probable cause. On April 16, 2012, defendant moved to dismiss the indictment, alleging that Mir had testified falsely before the grand jury. The motion attached one page of a four-page "supplementary [police] report" that stated, in part, that, on September 1, after the CI exited defendant's apartment, met with Mir and O'Brien, and showed them his purchase, the police set up surveillance on defendant's residence. Shortly afterward, according to the excerpt, defendant drove away from his residence, and Hudak and Schaumburg police officer John Cichy stopped him. Hudak searched defendant and found incriminating evidence.

¶ 4 On April 16, 2012, the State moved to deny the motion to quash and suppress, arguing that the warrant application had specified the place to be searched and that four controlled buys had provided probable cause. On April 27, 2012, the State moved to strike defendant's motion to dismiss the indictment, as statutorily groundless (see 725 ILCS 5/114-1 (West 2012)).

¶ 5 On May 23, 2012, defendant filed a "second amended motion" to quash and suppress, restating the original motion and alleging that the warrant application incorrectly stated that the

---

[1] The record does not disclose Mir's first name. The original criminal complaint identified him as "P. Mir."

CI had been under constant and direct surveillance when he entered defendant's apartment to buy cocaine.

¶ 6 On August 2, 2012, the parties presented the trial court with an agreement under which the State would dismiss the second count (possession of cannabis with the intent to deliver); the State would amend the first count so that it charged defendant with violating a different provision (720 ILCS 570/401(a)(2)(A) (West 2010)); defendant would plead guilty to the amended charge; and the State would recommend a 12-year prison term with eligibility for day-for-day good-behavior credit. After the court approved the agreement and admonished defendant, he pleaded guilty and was sentenced accordingly. Defendant did not directly appeal.

¶ 7 On May 20, 2013, defendant, through counsel, filed his petition under the Act.[2] The petition recited the facts underlying defendant's conviction, including the roles played by Hudak, O'Brien, and Cichy in arranging the controlled buys, obtaining the search warrant, executing the warrant, and stopping, searching, and arresting defendant. It alleged further as follows.

¶ 8 After he was charged, defendant believed that he was not guilty and that his pretrial motions had a reasonable chance of success. Nonetheless, on August 2, 2012, he decided to accept the agreement and plead guilty. He did so primarily because he believed that, in a trial, the three police officers would be deemed more credible witnesses than he would be. Later, while serving his sentence, defendant learned that Hudak, O'Brien, and Cichy had each been indicted on two counts of unlawful delivery of a controlled substance; three counts of armed

---

[2] Defendant also filed a petition for relief under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)), based on the same facts and theories set forth in the postconviction petition. The trial court dismissed the two petitions together. On appeal, defendant limits his claim of error to the dismissal of the postconviction petition.

violence; two counts each of calculated criminal drug conspiracy and criminal drug conspiracy; four counts of official misconduct; and four counts each of theft and burglary. The petition attached copies of the indictments against the three officers (and other defendants). All the offenses were alleged to have been committed in January 2013. The petition alleged on information and belief, however, that the officers "committed and/or were committing the above-stated offenses during their investigation of [defendant]." It further alleged that, had defendant been aware of these offenses, he would have pursued his motions and would not have pleaded guilty.

¶ 9    The petition alleged that defendant's conviction arose from the State's failure to disclose the investigating officers' illegal actions, an obligation imposed by *Brady*. Further, under *Kyles v. Whitley*, 514 U.S. 419 (1995), the duty existed even had the prosecutor(s) not personally known about the potentially exculpatory information. The *Brady* violation prejudiced defendant, as he would not have pleaded guilty had the State fulfilled its duty.

¶ 10    The trial court docketed the petition for further consideration. The State moved to dismiss the petition, arguing that it was legally insufficient for two reasons. First, in *United States v. Ruiz*, 536 U.S. 622 (2002), the Supreme Court held that *Brady* does not require the State to disclose potential impeachment evidence before a defendant pleads guilty. Second, and in the alternative only, under *People v. Orange*, 195 Ill. 2d 437 (2001), and *People v. Mahaffey*, 194 Ill. 2d 154 (2000), *overruled on other grounds*, *People v. Wrice*, 2012 IL 111860, the police officers' knowledge of their illegal acts could not be imputed to the prosecutor(s); thus, absent any allegation that the prosecutor(s) actually knew about the officers' misconduct, all of which

the indictments alleged occurred five months after defendant pleaded guilty, *Brady* had imposed no duty of disclosure on the prosecution.[3]

¶ 11   The trial court granted the State's motion to dismiss.  The court observed that, in *People v. Mitchell*, 2012 IL App (1st) 100907, the appellate court had stated that, although *Orange* and *Mahaffey* appeared inconsistent with *Kyles*, the supreme court had apparently "believed [that its holding that an individual police officer's knowledge need not be imputed to prosecutors] did not conflict with *Kyles*."  *Id.* ¶ 72.  Thus, even assuming that *Brady* applies to judgments based on guilty pleas, the petition failed.  Defendant timely appealed.

¶ 12   On appeal, defendant contends that his petition made a substantial showing that the State violated *Brady* and thus rendered his guilty plea unknowing.  Defendant argues that (1) *Ruiz* does not rule out applying *Brady* to guilty pleas; and (2) *Kyles* requires courts to impute police officers' knowledge of impeachment information to prosecutors, even absent any allegations that the prosecutors actually knew of it.

¶ 13   We hold that, under *Ruiz*, *Brady* does not require the disclosure of potential impeachment evidence before a defendant pleads guilty.  Thus, with no *Brady* violation, defendant's plea was not tainted and the petition was insufficient.  We need not decide whether the petition's failure to allege that the State actually knew of the impeachment evidence also compels affirmance.

¶ 14   We begin with general principles.  We review *de novo* the second-stage dismissal of a petition under the Act.  *Mahaffey*, 194 Ill. 2d at 171.  The petition must make a substantial showing of a constitutional violation in the proceedings that led to the petitioner's conviction or

---

[3] The State's motion attached an affidavit from an assistant State's Attorney in support of its allegation that, at the time of the guilty plea, the prosecutor did not know of the officers' alleged misconduct.  The trial court struck the affidavit as improper in a motion to dismiss.

sentence. *Id.* We accept as true all well-pleaded facts that are not refuted by the record. *People v. Coleman*, 183 Ill. 2d 366, 380 (1998).

¶ 15    Defendant's petition asserted that the State violated *Brady* by failing to disclose to him, before he entered his guilty plea, that Hudak, O'Brien, and Cichy had engaged in—or at least had been charged with—criminal misconduct. The petition contended that this information could have been used to impeach the officers at a trial and that, had defendant known of it, he would have proceeded on his pretrial motions and declined to plead guilty. The State responds in part that, under *Ruiz*, the State's failure to disclose potential impeachment evidence did not invalidate defendant's guilty plea, because *Brady* did not create an obligation to disclose. For the following reasons, we agree with the State.

¶ 16    In *Ruiz*, the defendant was charged with a drug offense. The government offered her a "fast track" plea bargain, under which she would waive an indictment, trial, and appeal and the government would recommend a downward departure from the otherwise applicable sentencing guidelines. However, the government also insisted that she waive her right to impeaching information relating to informants or other witnesses. The defendant refused this waiver, and the government withdrew the offer. The defendant nevertheless pleaded guilty, and the trial court sentenced her under the standard guidelines. She appealed. *Ruiz*, 536 U.S. at 625-26.

¶ 17    The federal court of appeals vacated the sentence. The court held that the constitution requires prosecutors to disclose certain impeachment evidence to defendants before trial; that defendants are entitled to receive that same information before they plead guilty; and that the constitution prohibits defendants from waiving that right. Thus, the court concluded, the "fast track" agreement was unlawful because it insisted upon the waiver. *Id.* at 626; see *United States v. Ruiz*, 241 F.3d 1157, 1164-67 (9th Cir. 2001).

¶ 18    The Supreme Court disagreed.  The Court noted that, when a defendant knowingly and voluntarily pleads guilty, he or she waives the right to a fair trial and other constitutional rights. *Ruiz*, 536 U.S. at 628-29.  The appeals court had held that a guilty plea is not voluntary "unless the prosecutors first made the same disclosure of material impeachment information that the prosecutors would have had to make had the defendant insisted upon a trial." *Id.* at 629.  Thus, the issue was "whether the Constitution requires that preguilty plea disclosure of impeachment information." *Id.*  The Court said flatly, "We conclude that it does not." *Id.*

¶ 19    The Court first emphasized the differences between a trial, to which *Brady* undoubtedly applies, and a guilty plea.  The "*fairness of a trial*" (with which *Brady* is concerned) is not equivalent for all purposes to "whether a plea is *voluntary*." (Emphases in original.) *Id.*  "[T]he Constitution does not require the prosecutor to share all useful information with the defendant." *Id.*  Impeachment evidence is "particularly difficult" to characterize "as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant." *Id.* at 630.

¶ 20    Second, the Court explained, the constitution "does not require complete knowledge of the relevant circumstances," and a defendant's ignorance of the possible grounds on which to impeach potential witnesses at a possible trial was "difficult to distinguish" from many other "forms of misapprehension" that would not prevent him from entering a valid guilty plea. *Id.* at 630-31.  Third, due-process considerations did not militate in favor of recognizing a defendant's right to be told of potentially impeaching evidence before pleading guilty, because the value of "a constitutional obligation to provide impeachment information during plea bargaining, prior to entry of a guilty plea," would be limited and it could seriously interfere with the government's

ability to a secure guilty plea that is factually justified, conducive to judicial efficiency, and desired by the defendants himself. *Id.* at 631. The Court held:

> "These considerations, taken together, lead us to conclude that the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* at 633.

¶ 21    In a special concurrence, Justice Thomas disapproved of any suggestion "that the constitutional analysis turns in some part on the 'degree of help' such information would provide to the defendant at the plea stage." *Id*. at 633 (Thomas, J., concurring) (quoting *id.* at 630 (majority opinion)).

¶ 22    Several lower courts have applied *Ruiz* to reject claims similar to the claim here. In *In re Brennan*, 72 P.3d 182 (Wash. Ct. App. 2003), the petitioner originally pleaded guilty to possessing methamphetamine. Police had arrested him and found suspected methamphetamine on his person and in his hotel room. Their field tests were positive for methamphetamine, and a chemist at the state crime lab later tested the substances with the same results. The petitioner also admitted to possessing methamphetamine and occasionally selling it. *Id*. at 183.

¶ 23    While the petitioner was serving his sentence, the chemist pleaded guilty to evidence tampering and official misconduct, based on evidence, including his admission, that, over several years, he had taken heroin from the lab and used it himself. The petitioner petitioned to withdraw his guilty plea, alleging that he had entered it only because he had then had no reason to contest the chemist's incriminating lab reports. *Id*. at 183-84. The court of appeals (which had original jurisdiction) denied the petition. The court rejected the petitioner's *Brady* claim as "foreclosed" by *Ruiz*. *Id*. at 186. By pleading guilty, the petitioner had given up his right to a fair trial *and* the accompanying right to impeach any prosecution witnesses. *Id.* The court also

noted that the mere fact that the chemist had used drugs in the period after he had tested the evidence in the petitioner's case was no evidence that the tests had been inaccurate. *Id.*

¶ 24    In *State v. Harris*, 2004 WI 64, 272 Wis. 2d 80, 680 N.W.2d 737, the defendant entered a negotiated guilty plea to first-degree sexual assault of a child. He filed a postconviction action to withdraw his plea, on the basis that the State had failed to disclose that the victim had twice made similar accusations against her grandfather, which could have been used to impeach her. The State admitted that it had not disclosed the information. The trial court granted the petition, relying on *Brady*, and the court of appeals affirmed. *Id.* ¶¶ 3-10.

¶ 25    The Wisconsin supreme court reversed. The court explained that, in light of *Ruiz*, due process does not require the prosecution to disclose impeachment information before a defendant pleads guilty. *Id.* ¶ 16. The court specifically rejected the defendant's argument that *Ruiz* was limited to federal " 'fast track' plea bargaining" (*id.* ¶ 17) and should be confined to its facts (*id.* ¶ 20). The court noted the Supreme Court's broad statement that the constitution does not require " 'preguilty plea disclosure of impeachment information.' " *Id.* (quoting *Ruiz*, 536 U.S. at 629). Further, the court reasoned, *Ruiz*'s holding was based primarily on the nature of impeachment evidence and its much greater importance to ensuring a fair trial than to ensuring a voluntary guilty plea. *Id.* ¶¶ 21-22. Finally, the court observed that other opinions (including *Brennan*) had recognized that *Ruiz* set out a broad rule, not one confined to plea bargains specifically incorporating waivers of *Brady* rights. *Id.* ¶ 23.

¶ 26    In *Friedman v. Rehal*, 618 F.3d 142 (2d Cir. 2010), the petitioner pleaded guilty to sex offenses against numerous minors. While in prison, he filed a petition alleging that, after viewing a documentary about his case, he learned that psychologists and detectives had used

manipulative tactics, including hypnosis, to obtain incriminating statements from the purported victims. The trial court denied the petition. *Id.* at 149-52.

¶ 27    On appeal, the court affirmed, holding that *Ruiz* required rejecting the petitioner's argument that withholding the evidence of hypnotically induced statements from the purported victims violated *Brady* and thus invalidated his guilty pleas. The court disagreed with the petitioner's assertion that the evidence at issue was " 'exculpatory' " and thus not within *Ruiz*'s holding, which explicitly addressed only "impeachment" evidence. *Id.* at 153. Moreover, the court held, even were the evidence considered "exculpatory" and not merely "impeaching," it would not help the petitioner, because "the Supreme Court has consistently treated exculpatory and impeachment evidence in the same way" in addressing *Brady* claims. *Id.* at 154.[4]

¶ 28    Based on the foregoing, we conclude that *Ruiz* controls this case and that defendant's *Brady* claim is legally baseless. Without doubt, the evidence at issue was impeaching and not otherwise exculpatory: the alleged misdeeds of the three police officers did not involve the facts of this case or any conduct in which defendant participated. Defendant's attempt to limit *Ruiz* to the validity of a waiver of *Brady* rights as part of a plea bargain is unavailing for the reasons given in *Harris*. Moreover, as we read *Ruiz*, the primary reason that the Court saw no constitutional infirmity in requiring a waiver of the *Brady* right there was that the purported right did not really exist: *Brady* did not require the State to disclose the impeachment information at issue, so the alleged "waiver" was illusory.

---

[4] But see *McCann v. Mangialardi*, 337 F.3d 782, 787 (7th Cir. 2003) (stating, in *dictum*, that *Ruiz* "strongly suggests" that *Brady* would require preplea disclosure of evidence of actual innocence, such as alleged information in that case that drugs found in the car the plaintiff was driving on the day of his arrest were planted there without his knowledge).

¶ 29    As we dispose of this appeal in light of *Ruiz*, we need not consider the State's alternative ground for affirmance.

¶ 30    The judgment of the circuit court of Du Page County is affirmed.  As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal.  55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 179 (1978).

¶ 31    Affirmed.