NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210515-U

NO. 4-21-0515

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 20, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| EDWARD TATUM, | ) | No. 02CF1005 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John M. Madonia, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We grant the Office of the State Appellate Defender's motion to withdraw as
              appellate counsel and affirm the trial court's judgment finding no meritorious
              claims can be raised on appeal.

¶ 2     Defendant, Edward Tatum, appeals from the trial court's dismissal of his

successive postconviction petition at the second stage. On appeal, the Office of the State

Appellate Defender (OSAD) moves to withdraw as counsel on the ground no issues of arguable

merit can be raised. Defendant did not file a response to OSAD's motion. We grant OSAD's

motion and affirm the trial court's judgment.

¶ 3                          I. BACKGROUND

¶ 4     This court has set forth the underlying facts of this case in defendant's prior

appeals. See *People v. Tatum*, No. 4-09-0398 (2010) (unpublished order under Illinois Supreme

Court Rule 23); *People v. Tatum*, No. 4-06-0841 (2008) (unpublished order under Illinois

Supreme Court Rule 23). Accordingly, we will set forth only those facts necessary to resolve the issues presented in this case.

¶ 5                          A. Initial Proceedings and Plea

¶ 6        In November 2002, defendant gave a voluntary statement to Springfield police officers confessing to the murder of his wife, Jana Tatum. The State charged defendant by information with three counts of first degree murder (720 ILCS 5/9-1(a) (West 2002)) related to his wife's death.

¶ 7        Defendant was appointed a public defender, Randy Blue, who represented defendant in a motion to suppress. In the motion, defendant alleged he was interrogated by Detectives James Graham and Paul Carpenter, he was not given *Miranda* warnings prior to his interrogation, and he requested an attorney prior to making any statement and was denied.

¶ 8        At the April 2003 hearing on defendant's motion to suppress, Detectives Graham and Carpenter testified defendant was Mirandized prior to being interviewed and defendant did not request an attorney until a written statement was presented to him to sign. Defendant testified he believed he was under arrest, was high on crack cocaine, was never read his *Miranda* warnings , and requested an attorney early in the interview. The trial court denied defendant's motion to suppress, finding the case was a question of credibility and the detectives' testimony was "consistent" and "credible."

¶ 9        In June 2003, Blue withdrew from the case and public defender Robert Scherschligt took over defendant's representation.

¶ 10        In April 2004, pursuant to a negotiated plea agreement, defendant pleaded guilty to one count of first degree murder (720 ILCS 5/9-1(a)(1) (West 2002)) in exchange for a

30-year sentence and the dismissal of the other two counts. The trial court sentenced defendant pursuant to the plea agreement and defendant did not pursue a direct appeal.

¶ 11                                    A. Postconviction Petition

¶ 12        In December 2004, defendant filed a *pro se* petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2004)). In his petition, defendant argued he received ineffective assistance of counsel on several grounds. The trial court advanced defendant's petition to the second stage and appointed postconviction counsel, Sean Liles. Counsel filed an amended petition to elaborate defendant's allegations. The State moved to dismiss defendant's petition, and the court granted the motion, holding defendant forfeited arguments by not bringing them on direct appeal. This court reversed, finding the trial court incorrectly determined defendant had forfeited his ineffective assistance claims, and remanded for further proceedings. See *Tatum*, No. 4-06-0841 (2008) (unpublished order under Illinois Supreme Court Rule 23).

¶ 13        In April 2009, Liles filed an amended postconviction petition, incorporating the prior petition and alleging trial counsel was ineffective for misinforming defendant he faced an extended-term sentence and pressuring defendant into taking the plea deal. The trial court held an evidentiary hearing and Scherschligt testified. The court denied defendant's postconviction petition. On appeal, OSAD moved to withdraw as appellate counsel and this court affirmed the denial of defendant's postconviction petition. See *Tatum*, No. 4-09-0398 (2010) (unpublished order under Illinois Supreme Court Rule 23).

¶ 14                               C. Successive Postconviction Petition

¶ 15        In October 2009, while the appeal from the denial of his first postconviction petition was still pending but after OSAD moved to withdraw, defendant filed a motion for leave

to file a successive postconviction petition. In his motion, defendant alleged ineffective assistance of postconviction counsel for failing to call defendant to testify during the evidentiary hearing. The trial court allowed defendant leave to file a successive postconviction petition.

¶ 16         In February 2010, defendant filed his *pro se* successive petition. Defendant alleged (1) newly discovered evidence of misconduct and "patterns of corrupt behavior" by Detectives Graham and Carpenter, the lead detectives in the Jana Tatum murder investigation; (2) ineffective assistance of postconviction counsel, Liles, for failing to call defendant as a witness during his evidentiary hearing; and (3) Detectives Graham and Carpenter violated his *Miranda* rights. Defendant attached to the petition his own affidavit and two newspaper articles on misconduct allegations surrounding Graham and Carpenter. The trial court subsequently entered a second order allowing defendant leave to file his successive petition and appointed new postconviction counsel, Brendan Harris.

¶ 17         In October 2016, Harris filed a motion to withdraw as counsel, citing irreconcilable differences. The trial court held a hearing on the motion in August 2017, and Harris was permitted to withdraw. The court appointed Patrick Sheehan Jr. to represent defendant in ongoing postconviction proceedings.

¶ 18         In October 2020, counsel filed an amended successive postconviction petition and incorporated by reference the *pro se* petition in its entirety. In the amended petition, defendant alleged (1) the State committed a *Brady* violation (see *Brady v. Maryland*, 373 U.S. 83 (1963)) by failing to disclose the misconduct accusations against Graham and Carpenter, (2) ineffective assistance of "trial counsel" for failing to investigate the misconduct allegations against Graham and Carpenter, and (3) unreasonable assistance of postconviction counsel for failing to call defendant to testify at the evidentiary hearing. Attached to the petition were defendant's own

- 4 -

affidavit and an Illinois State Police investigative summary of misconduct allegations against Graham and Carpenter.

¶ 19    The State filed a motion to dismiss defendant's successive petition, and the trial court dismissed the petition in August 2021, finding the petition failed to make a substantial showing of a constitutional violation.

¶ 20    Defendant timely appealed the trial court's dismissal of his successive postconviction petition, and OSAD was appointed to represent him on appeal. In February 2022, OSAD moved to withdraw as counsel on appeal. We granted defendant leave to file a response to OSAD's motion on or before March 31, 2022. Defendant has not done so.

¶ 21                                    II. ANALYSIS

¶ 22    OSAD contends no meritorious argument can be made the trial court erred in dismissing defendant's successive postconviction petition at the second stage. We agree.

¶ 23                              A. Standard of Review

¶ 24    The Act provides a means to collaterally attack a criminal conviction based on a substantial denial of a defendant's state or federal constitutional rights. *People v. Hodges*, 234 Ill. 2d 1, 9, 912 N.E.2d 1204, 1208 (2009). A proceeding under the Act is a collateral proceeding and not an appeal from the defendant's conviction and sentence. *People v. Beaman*, 229 Ill. 2d 56, 71, 890 N.E.2d 500, 509 (2008). Issues adjudicated on direct appeal or in previous collateral proceedings are barred by *res judicata*, and issues that could have been raised but were not are forfeited. *People v. Tate*, 2012 IL 112214, ¶ 8, 980 N.E.2d 1100. The Act contemplates the filing of only one postconviction petition. *People v. Pitsonbarger*, 205 Ill. 2d 444, 459, 793 N.E.2d 609, 621 (2002). A defendant must obtain leave from the trial court in order to file a successive petition under the Act. 725 ILCS 5/122-1(f) (West 2020).

¶ 25        The Act sets forth three stages of proceedings. *People v. Pendleton*, 223 Ill. 2d

458, 471-72, 861 N.E.2d 999, 1007; 725 ILCS 5/122-2.1 (West 2020). If the petition is not

dismissed at the first stage as being frivolous or patently without merit, then the trial court

(1) orders the petition to be docketed for further consideration and (2) appoints counsel if the

petitioner is indigent and so requests. 725 ILCS 5/122-2.1(b) (West 2020).

¶ 26        At the second stage of proceedings on a postconviction petition, dismissal is

warranted "only when the allegations in the petition, liberally construed in light of the trial

record, fail to make a substantial showing of a constitutional violation." *People v. Hall*, 217 Ill.

2d 324, 334, 841 N.E.2d 913, 920 (2005). We accept as true all factual allegations not positively

rebutted by the record. *People v. Childress*, 191 Ill. 2d 168, 174, 730 N.E.2d 32, 35 (2000). We

review *de novo* the dismissal of a postconviction petition without an evidentiary hearing. *Hall*,

217 Ill. 2d at 334, 841 N.E.2d at 920.

¶ 27                                B. *Brady*

¶ 28        OSAD first contends it can make no meritorious argument on appeal in support of

defendant's *Brady* claim. We agree.

¶ 29        In *Brady*, 373 U.S. at 87, the Supreme Court held the prosecution violates a

defendant's constitutional right to due process by failing to produce evidence favorable to the

accused and material to guilt or punishment. See *Beaman*, 229 Ill. 2d at 73, 890 N.E.2d at 510.

"To comply with *Brady*, the prosecutor has a duty to learn of favorable evidence known to other

government actors, including the police." *Id.*

> "A *Brady* claim requires a showing that: (1) the undisclosed evidence is favorable
>
> to the accused because it is either exculpatory or impeaching; (2) the evidence
>
> was suppressed by the State either willfully or inadvertently; and (3) the accused

- 6 -

was prejudiced because the evidence is material to guilt or punishment. [Citation.] Evidence is material if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. [Citations.] To establish materiality, an accused must show ' "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." ' [Citation.]" *Id.* at 73-74.

¶ 30    In the amended petition, defendant alleges the State failed to disclose the "serious misconduct allegations" against Detectives Graham and Carpenter. Graham and Carpenter interviewed defendant and testified at the hearing on his motion to suppress. Defendant argues if the evidence of the misconduct allegations had been disclosed, there was a "reasonable probability that the result of this case would be different," such as defendant prevailing on his motion to suppress or proceeding with trial based on the impeachment evidence.

¶ 31    Defendant claims "in 2001, even before the November 2002 arrest of [defendant], it was a known fact that both James Graham and Paul Carpenter were being investigated and subsequently arrested for *** misconduct." However, defendant does not offer any evidence Graham and Carpenter's misconduct was known in 2001. Defendant attached two news articles to his *pro se* petition, one undated and one dated to 2009. The Illinois State Police investigative report attached to defendant's amended petition was not completed until June 2006, and it indicates the investigation did not begin until 2005. The vast majority of the misconduct incidents did not occur until after defendant's guilty plea. It is unclear how the State, willfully or inadvertently, could have suppressed information which did not yet exist.

¶ 32    Further, even assuming the State was aware of any misconduct allegations, defendant does not demonstrate how it would create a "reasonable probability" the result would

have been different. Defendant only argues he "may" have succeeded on his motion to suppress with the impeachment of Graham and Carpenter. However, even if Graham and Carpenter had been impeached, defendant's version of events at the hearing was refuted by the testimony of another officer, Christopher Stout. Corroborating evidence demonstrated defendant entered the police station of his own free will with a calm demeanor. It is unlikely, even with evidence of Graham and Carpenter's misconduct, the outcome of the suppression hearing would have been different.

¶ 33 Finally, the State was not required to disclose impeachment evidence prior to defendant's guilty plea. In *United States v. Ruiz*, 536 U.S. 622, 628-29 (2002), the Supreme Court considered "whether the [U.S.] Constitution requires *** preguilty plea disclosure of impeachment information" and concluded the Constitution does not require any such disclosure. The Supreme Court emphasized the difference between a trial, to which *Brady* applies, and a guilty plea. The Court found that *Brady* is concerned with the "fairness of a trial" which is not equivalent to "whether a plea is voluntary." *Id.* "[T]he Constitution does not require the prosecutor to share all useful information with the defendant." *Id.* Further, the Court explained that the Constitution "does not require complete knowledge of the relevant circumstances," and a defendant's ignorance of the possible grounds on which to impeach potential witnesses at a possible trial was difficult to distinguish from many other "forms of misapprehension" that would not prevent him from entering a valid guilty plea. *Id.* The Court went on to ultimately hold:

> "These considerations, taken together, lead us to conclude that the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* at 633.

¶ 34 In this case, the evidence of Graham and Carpenter's misconduct, as much as it may have existed at the time, was impeaching and not otherwise exculpatory. Evidence of the detectives' misconduct did not involve the facts of defendant's case or any conduct in which defendant participated. Therefore, the State was not required to disclose the evidence prior to defendant's plea. See *People v. Gray*, 2016 IL App (2d) 140002, ¶ 13, 54 N.E.3d 841 (adopting *Ruiz* and holding "*Brady* does not require the disclosure of potential impeachment evidence before a defendant pleads guilty"). No colorable argument can be made the trial court erred in dismissing defendant's *Brady* claim.

¶ 35 C. Ineffective Assistance of Trial Counsel

¶ 36 OSAD next contends it can make no meritorious argument defendant received ineffective assistance of counsel. We agree.

¶ 37 To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficient-performance prong requires a defendant to show counsel's performance was objectively unreasonable under prevailing professional norms. *People v. Veach*, 2017 IL 120649, ¶ 30, 89 N.E.3d 366. The prejudice prong requires a showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Id.* A defendant must satisfy both prongs to prevail on a claim of ineffective assistance of counsel. *Id.*

¶ 38 Trial counsel has a duty to conduct " 'reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *People v. Domagala*, 2013 IL 113688, ¶ 38, 987 N.E.2d 767 (quoting *Strickland*, 466 U.S. at 691). When the record

shows counsel had reason to know, from an objective standpoint, a possible defense was available, the failure to investigate that defense fully can constitute ineffective assistance of counsel. *Id.*

¶ 39        In this case, it is not clear which "trial counsel" defendant alleged was ineffective for failing to investigate the misconduct of Graham and Carpenter—Blue, who represented defendant at the motion to suppress hearing, or Scherschligt, who represented defendant during his guilty plea. Regardless, defendant provides no reason for us to believe any counsel was aware or should have been aware of misconduct allegations against Graham and Carpenter.

¶ 40        Defendant claims in his amended petition the detectives' misconduct "started to become known throughout the community due to investigative reporting by the *Illinois Times*, *State Journal Register*, and other news outlets." However, defendant provides no showing the misconduct was widely known prior to his guilty plea. Between the original and amended petitions, defendant attached (1) an undated opinion article from the State Journal Register which discussed misconduct and Carpenter's arrest, (2) an email of an article dated December 2, 2009, which discussed a suit filed by a defendant charged in 2005, and (3) the Illinois State Police investigative report which, as discussed above, began in 2005 and concluded in June 2006. Defendant pleaded guilty in April 2004. Defendant has therefore provided no evidence any of his trial attorneys had reason to be aware of the misconduct allegations against Detectives Graham and Carpenter. See *People v. Johnson*, 2011 IL App (1st) 092817, ¶ 75, 962 N.E.2d 1160 (finding no ineffective assistance where "defendant ha[d] presented no evidence that his attorneys failed to investigate the abuse listed in the newspaper articles or were even made aware of the allegations in the newspaper articles"). Any argument the trial court erred in dismissing defendant's ineffective assistance claim would be without merit.

¶ 41             D. Unreasonable Assistance of Postconviction Counsel

¶ 42             OSAD additionally contends any argument defendant was denied the reasonable

assistance of postconviction counsel during the third-stage evidentiary hearing of his first

postconviction petition would be meritless. We agree.

¶ 43             Section 122-1(a)(1) of the Act (725 ILCS 5/122-1(a)(1) (West 2020)) provides:

"Any person imprisoned in the penitentiary may institute a proceeding under this Article if the

person asserts that *** in the proceedings which resulted in his or her conviction there was a

substantial denial of his or her rights under the Constitution of the United States or of the State of

Illinois or both." "In other words, for a claim to be cognizable under the Act, the claim must

(1) allege a substantial denial of the defendant's constitutional rights (2) that occurred during the

proceedings that resulted in the defendant's conviction." *People v. Dalton*, 2017 IL App (4th)

141088, ¶ 29, 71 N.E.3d 820.

¶ 44             Defendant's claim in his successive postconviction petition of unreasonable

assistance of postconviction counsel does not meet the threshold requirements of section

122-1(a)(1). First, defendant's claims are not of a constitutional dimension as the right to the

assistance of counsel in postconviction proceedings is wholly statutory. See *People v. Suarez*,

224 Ill. 2d 37, 42, 862 N.E.2d 977, 979 (2007) ("There is no constitutional right to the assistance

of counsel in postconviction proceedings; the right to counsel is wholly statutory."); see also

*People v. Custer*, 2019 IL 123339, ¶ 46, 115 N.E.3d 374 (declining "to extend the posttrial

motion procedures *** created in [*People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984),]

to allegations of unreasonable assistance by postconviction counsel"). Second, defendant's claim

relates to an alleged error that occurred during the postconviction proceedings, not the

proceedings that led to his conviction. See *Dalton*, 2017 IL App (4th) 141088, ¶ 30 (finding the

defendant's claim in his successive postconviction petition suggesting postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984) did not meet the threshold requirements of section 122-1(a)(1) because it was not of a constitutional dimension and did not relate to the proceedings that led to the defendant's conviction).

¶ 45        Because defendant's final claim in his successive postconviction petition does not meet the threshold requirements of section 122-1(a)(1), we agree with OSAD no colorable argument can be made the trial court erred in dismissing defendant's successive petition.

¶ 46                        III. CONCLUSION

¶ 47        For the reasons stated, we grant OSAD's motion for leave to withdraw as appellate counsel and affirm the trial court's judgment.

¶ 48        Affirmed.